**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORINDIA E. REYES & DORINDIA YOST,<br><br>    Plaintiffs,<br><br>vs.<br><br>SAN DIEGO PROPERTIES ACQUISITION & DEVELOPMENT LLC d/b/a BELLAGIO VILLA APARTMENTS; BARROW FALLS CORP., a California Corporation; and ROBERT LANE d/b/a MIDDLE LANE INVESTMENTS,<br><br>    Defendants. | Case No.: 13-CV-1327-BTM-NLS<br><br>**ORDER DENYING MOTION TO DISMISS AND DENYING MOTION TO STRIKE** |

    Defendant San Diego Properties Acquisition & Development LLC ("Defendant") has filed a Motion to Dismiss (Doc. 8) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure as well as a Motion to Strike Punitive Damages Allegations (Doc. 7) pursuant to Rule 12(f).[1]  For the reasons set forth herein, the Court **DENIES** the motions.

---

[1] Defendant's request for an extension of time to respond to the Complaint (Doc. 6) is granted *nunc pro tunc* to October 24, 2013.

# I.  BACKGROUND[2]

Defendants are "owners and operators" of the premises at issue.  ¶8.  The Defendant, Bellagio Villa Apartments, is the residential property owner.  On or about April 14, 2010 Dorindia Reyes and Christopher Reyes rented, pursuant to a lease, a second story apartment on the subject property in Santee, California.  ¶¶4, 8, 9, 10.  That apartment was the only one available in that sixty-six unit building at the time.  ¶¶8, 10.  Upon submitting a rental application, they told the property manager that they needed a ground floor apartment because their respective physical disabilities made it difficult to use the stairs.  ¶12.  Dorinda Reyes informed the manager that she had to keep her motorized scooter downstairs, as it was too heavy to bring up the stairs.  ¶13.  The manager said they would be able to take the first two-bedroom apartment on the first floor that became available.  ¶14.  Ms. Reyes moved into the apartment along with her granddaughter, Dorinda Yost, and grandson, Christopher Reyes.

The tenants never fully unpacked because "their physical conditions would have made it more difficult to unpack and then pack again for the expected relocation."  ¶4.  In early 2012, they were told they would be able to move to the first floor once the unit underneath theirs was renovated.  ¶23.  In March 2012 they

---

[2] Unless otherwise noted, all facts herein are taken from the Complaint (Doc. 1) and all "¶" citations are references to paragraphs of the Complaint.  For purposes of the motion to dismiss, the Court accepts as true the allegations of the Complaint.  Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976).  All references to a "Rule" refer to the Federal Rules of Civil Procedure.

were told they could move in. ¶24.  On or about April 1, 2012, however, Robert Lane, the new on-site manager, "told them that they would not be allowed to move downstairs, because that unit had turned out better than he thought it would, and that [they] would just trash the unit." ¶27.  He also said he was concerned that, if they left the windows open, passersby would see their unpacked boxes. ¶27.

On or about July 9, 2012, paramedics responded to a call to Plaintiffs' apartment, where Christopher Reyes was suffering from shortness of breath and lack of oxygen due to his disability. ¶30.  He lost consciousness and later died, allegedly due, in part, to a delay caused by the paramedics' need to navigate the stairway. ¶30.  Plaintiffs contend that Defendants acted with intent to injure or a willful and conscious disregard for the rights of Plaintiffs and Christopher Reyes. ¶34.  Plaintiffs seek both compensatory and punitive damages. ¶¶32, 34.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  A motion to dismiss tests the sufficiency of a complaint or counterclaim, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The pleading is

1  construed in the light most favorable to the non-moving party and all material
2  allegations in it are taken to be true.  Sanders v. Kennedy, 794 F.2d 478, 481 (9th
3  Cir.1986).  However, even under the liberal pleading standard of Federal Rule of
4  Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his
5  entitlement to relief requires more than labels and conclusions, and a formulaic
6  recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at
7  555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal brackets and
8  quotation marks omitted)).  Hence, the Court need not assume unstated facts, nor
9  will it draw unwarranted inferences.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950
10 (2009) ("Determining whether a complaint states a plausible claim for relief . . .
11 [is] a context-specific task that requires the reviewing court to draw on its judicial
12 experience and common sense."); Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th
13 Cir. 2009); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)
14 ("Nor is the court required to accept as true allegations that are merely conclusory,
15 unwarranted deductions of fact, or unreasonable inferences.").
16      Under Twombly, a plaintiff must allege "enough facts to state a claim to
17 relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility
18 when the plaintiff pleads factual content that allows the court to draw the
19 reasonable inference that the defendant is liable for the misconduct alleged."
20 Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556). "The plausibility
21 standard is not akin to a probability requirement, but it asks for more than a sheer

1 possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 556-57) (internal quotation marks omitted). In sum, if the facts alleged raise a reasonable inference of liability – stronger than a mere possibility – the claim survives; if they do not, the claim should be dismissed. See Iqbal, 129 S. Ct. at 1949-50.

**B.  Motion to Strike**

Under Rule 12(f), the Court may strike from a pleading any material that is "redundant, immaterial, impertinent or scandalous." Motions to strike are generally disfavored. Bureerong v. Uvawas, 922 F.Supp. 1450, 1478 (C.D.Cal.1996). But the Court may exercise its power to strike "for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

### III.  DISCUSSION

**A.  Motion to Dismiss**

The Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3604 et. seq., prohibits discrimination against disabled people in the sale or rental of a dwelling. See Giebeler v. M&B Assocs., 343 F.3d 1143, 1146 (9th Cir. 2003) (citing 42 U.S.C. § 3604(f)(1)). The Complaint asserts at least two theories of

FHAA liability: (1) failure to provide a reasonable accommodation in violation of 42 U.S.C. § 3604(f) (Compl. ¶37A), and (2) interfering with the enjoyment of the premises based on a disability in violation of 42 U.S.C. § 3617 (Compl. ¶37B). More specifically, the Complaint alleges that (1) Ms. Reyes and her grandson were disabled (¶¶5,6), (2) Defendants knew or should have known of their disabilities (¶¶11-13), (3) Plaintiffs requested a first-floor apartment (¶¶13, 19-22) to accommodate their disabilities, (4) Defendants denied that request despite promising the first one that became available (¶¶16-18, 27, 29), and (5) Plaintiffs suffered injury thereby (¶¶30, 40). The motion first asks whether these allegations sufficiently plead a plausible FHAA discrimination claim. They do, though it is not entirely clear whether Plaintiff has presented alternative theories of liability pursuant to different sections of the FHAA.

1. <u>Plaintiffs' Reasonable Accommodation Claim</u>[3]

One form of prohibited discrimination is "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use

---

[3] As a preliminary matter, the Court notes that the Complaint alleges a violation of 42 U.S.C. § 3604(f)(3)(A). (Compl. ¶37A.) That subsection provides that prohibited discrimination include "refusals to permit, at the expense of the handicapped person, reasonable modifications . . . ." That subsection is not implicated by the facts alleged. It is clear from the language preceding the errant citation that Plaintiffs allude to the next subsection, 42 U.S.C. § 3604(f)(3)(B). Since the briefs argue specifically over the applicability of § 3604(f)(3)(B), the Court disregards the reference to § 3604(f)(3)(A) and interprets the Complaint to allege, *inter alia*, a violation of § 3604(f)(3)(B).

and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Relying on Giebeler v. M&B Assocs., 343 F.3d 1143 (9th Cir. 2003), Defendants argue that only a disabled person may sue under the FHAA generally, and under a failure to accommodate theory in particular. Therefore, defendants contend that since Dorinda Yost is not disabled, she cannot bring a claim. In Giebeler, the Court stated:

> To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation.

Giebeler v. M&B Assocs., 343 F.3d at 1147 (citing United States v. California Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)). This passage's references to a handicapped plaintiff are dicta to the extent they suggest that only a disabled person can bring a FHAA claim. See Barapind v. Enomoto, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam) (statement regarding question not presented for review is nonbinding dictum); United States v. Koyomejian, 970 F.2d 536, 544 (9th Cir. 1992). Whether one must be disabled to bring a FHAA claim was not an issue in Giebeler, as made clear by the very next sentence of the opinion: "The defendants do not dispute that Giebeler is disabled for the purposes of the FHAA and that they knew of his disability . . . ." Id. Indeed, the individual plaintiff in the case cited by Giebler was not disabled; she was the "mother of a handicapped child." California Mobile Home Park Mgmt. Co., 107

F.3d at 1374.  Furthermore, the plain language of 42 U.S.C. § 3604(f)(2)(C) makes it unlawful to discriminate against any person because of the handicap of "any person associated with that person."  Plaintiffs clearly allege that Defendants discriminated against them because of the handicaps of Christopher Reyes and Dorindia Reyes.

"[T]he FHAA requires landlords to make reasonable accommodations in an effort to provide disabled individuals equal opportunity to reside in the home of their choice."  <u>Garcia v. Alpine Creekside, Inc.</u>, No. 13-cv-259, 2013 U.S. Dist. LEXIS 89227, *13-14 (S.D. Cal. June 25, 2013) (Anello, J.).  Examples published by the government help crystallize this requirement.[4]

> **Example 1**: A housing provider has a policy of providing unassigned parking spaces to residents. A resident with a mobility impairment, who is substantially limited in her ability to walk, requests an assigned accessible parking space close to the entrance to her unit as a reasonable accommodation. There are available parking spaces near the entrance to her unit that are available to all residents on a first come, first served basis. The provider must make an exception to its policy of not providing assigned parking spaces to accommodate this resident.
>
> **Example 2**: A housing provider has a policy of requiring tenants to come to the rental office in person to pay their rent. A tenant has a mental disability that makes her afraid to leave her unit. Because of her disability, she requests that she be permitted to have a friend mail her rent payment to the rental office as a reasonable accommodation. The provider must make an exception to its payment policy to accommodate this tenant.

---

[4] Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations Under the Fair Housing Act (May 17, 2004) at 6, available at http://www.justice.gov/crt/about/hce/joint_statement_ra.pdf (last visited June 19, 2013).

Here, the requested accommodation was essentially a right of first refusal as to a first-floor rental unit. On these facts, the opportunity to rent a first floor apartment is analogous to the first example because the accommodation mitigates the need for a mobility impaired tenant to traverse extra distances—a burden suffered on account of the tenant's disability. Indeed, even <u>Giebeler</u> suggests that such an accommodation is sufficiently linked to the inability to use or enjoy the premises because of a disability:

> An example might be an individual who needed a ground floor apartment because of his disability, where such apartments are more expensive. If the individual was able to work but did not earn enough money to qualify for the more expensive apartment . . . the landlord could be required to accommodate the disabled renter by accepting a cosigner or allowing him to live in an apartment rented by a relative [if that accommodation is reasonable].

343 F.3d 1143, 1151 n.5 (9th Cir. 2003).

Thus, Plaintiffs have plausibly alleged a scenario that would give rise to FHAA liability.

2. <u>Dorindia Yost's Standing Under The Fair Housing Act</u>

There is no dispute that plaintiff Dorindia Yost lived in the apartment with Dorindia Reyes, her grandmother, and Christopher Reyes, her brother. She and her grandmother repeatedly requested the first-floor apartment that they had allegedly

//

//

been promised. ¶19.  They jointly allege injury in the form of humiliation, mental anguish, and emotional distress.  ¶¶32.  There is no allegation that Ms. Yost was disabled.  According to Defendant, that means Ms. Yost "is not a protected party under the FHAA."  Defendant is incorrect.  Under the plain language of the FHAA, an "aggrieved" person need not be disabled.  For example, the conduct proscribed by the FHAA includes discrimination against a buyer or renter who is not disabled where it is "because of a handicap of any person associated with that buyer or renter."  42 U.S.C. § 3604(f)(1)(C).  Under this statutory scheme, an actual but ancillary injury is sufficient to confer standing, e.g., by virtue of needing to care for a person whose disability is exacerbated by an unfair housing practice.  See Gladstone Realtors v. Village of Bellwood, 441 U.S. 91 (1979).

    The FHAA definition of "aggrieved person" includes anyone who "claims to have been injured by a discriminatory housing practice."  42 U.S.C. § 3602(i).  Ms. Yost lived in the second floor apartment with her disabled relatives.  Each of them expected to move to the first available first-floor unit, and each was allegedly denied the opportunity to do so on a discriminatory basis.  If that discriminatory basis was one proscribed by the FHAA, then Ms. Yost suffered a covered injury regardless of whether she was disabled herself.  The Court accordingly finds that Plaintiffs adequately allege Ms. Yost to be an aggrieved person under the FHAA.  Additionally, Ms. Yost has sufficiently pled an injury in fact.  Thus, she has standing.

B. **Motion to Strike**

1. Christopher Reyes

It is undisputed that Christopher Reyes is deceased, and that neither he nor his estate is a party to this lawsuit. Defendant therefore asks the Court to strike all references to him from the Complaint. The Court agrees that no party presently before the Court in this case may recover on behalf of Christopher Reyes. See Fed. R. Civ. P. 17(b). Nonetheless, the references to Mr. Reyes shall not be stricken, as he could plausibly be an anchor for each plaintiff's claims for the reasons discussed in the preceding subsection.

2. Punitive Damages

Pointing to Cal. Civ. Code § 3294 and several California decisions applying its heightened pleading standard to allegations of "oppression, fraud, or malice," Defendant asks the Court to strike Plaintiffs' prayer for punitive damages. Defendant argues that Plaintiffs' allegations are too austere to satisfy § 3294. Even assuming *arguendo* that is so, where state procedural rules directly conflict with the applicable Federal Rules of Civil Procedure, federal courts apply the federal rules. "Although Cal. Civ. Code § 3294 provides the governing substantive law for punitive damages, the Federal Rules of Civil Procedure govern the Court's determination regarding the adequacy of the pleadings." Premiere Innovations, Inc. v. IWAS Indus., LLC, 2007 U.S. Dist. LEXIS 72755 (S.D. Cal. 2007) (finding general allegations of malicious, oppressive, or fraudulent conduct sufficient to

support a prayer for punitive damages).  See also Hanna v. Plumer, 380 U.S. 460, 471 (1965); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003); Clark v. Allstate Ins. Co., 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000).  The Court accordingly turns to consider whether the Complaint sufficiently pleads damages under the Federal Rules.

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The Court finds that Plaintiffs have adequately plead a claim for punitive damages.  Therefore, the motion to strike the prayer for punitive damages is **DENIED**.

### IV.  CONCLUSION

For the reasons stated above, the Court **ORDERS** that San Diego Properties Acquisition & Development LLC's Motion to Dismiss and Motion to Strike are **DENIED**.  The defendant shall file an answer within 20 days of the entry of this Order.  The assigned Magistrate Judge shall schedule an early neutral evaluation conference and a case management conference.  The pretrial conference shall be held on December 17, 2014 at 10:30 a.m.  The trial shall commence on January 20, 2015 at 9:00 a.m.

**IT IS SO ORDERED.**

DATED: May 9, 2014

_____
Barry Ted Moskowitz, Chief Judge
United States District Court